CORBY v. CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Plaintiff in Error.

Division One, June 14, 1899.

1. **Nuisance**: STEAM RAILWAY ON ALLEY: ORDINANCE.  An ordinance granting to a steam railway the right to construct its railroad track in a public alley twenty feet wide, which puts no limitation upon the continuous and continual use of the alley by the railroad's trains or cars, is void. And so, also, is an ordinance that states the track must not be used for loading and unloading cars more than twelve hours consecutively.

2. ———: ———: ———: INJUNCTION.  And a suit in injunction may be maintained by the owner of the property which abuts on the alley, to restrain such railroad company from constructing its track in such alley.

3. ———: ———: ———: ———: JUDGMENT ON THE PLEADINGS.  If it is patent on the face of the pleadings that the use of the alley by the railroad would unreasonably obstruct the free access of the abutting property owner to his property from the alley, or the open public use thereof by the public, judgment may be rendered restraining the construction of the railroad track, without any testimony.

*Error to Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

AFFIRMED.

BROWN & DOLMAN for plaintiff in error.

(1)  The answer states a good defense. *Prima facie* the proposed construction, maintenance and operation of the track, under the city ordinance, was lawful, for a public use, and not a nuisance; and the burden rested upon the plaintiff to prove that the power exercised by the city was improperly exercised in this particular case. Brown v. Railroad, 137 Mo. 529; Railroad v. Railroad, 97 Mo. 457; Gaus Mfg. Co. v. Railroad, 113 Mo. 308; Cross v. Railroad, 77 Mo. 321. (2) The

presumption is, that the action of the council was right and proper and that, in granting the license, due regard was had to the rights of the public and of the owners of property abutting upon the alley.   Brown v. Railway, 137 Mo. 529.

B. R. VINEYARD and JAMES F. PITT for defendant in error.

(1)   The damage which a property owner sustains by a wrongful obstruction in the building of a steam railroad in a street and which prevents access to said property, is different, not only in degree, but in kind, from that sustained by the general public.   And such building is a new and additional burden for which the railroad company is liable in damages. Hayes v. Railroad, 46 Minn. 349; Linley v. Railroad, 26 Conn. 249; Henderson v. Railroad, 78 N. Y. 423; Egerer v. Railroad, 130 N. Y. 108; Railroad v. Scott, 132 Ill. 438; Hitchcock v. Railroad, 88 Ia. 242; Railroad v. Heisel, 47 Mich. 393; Starr v. Railroad, 24 N. J. L. 592; Evans v. Railroad, 88 Wis. 597.   And such obstruction of the street, when threatened, may be stopped by injunction in behalf of the property owner.   Schulenberg v. Railroad, 129 Mo. 455; Sherlock v. Railroad, 142 Mo. 172.   (2)   The right of plaintiff to the use of the street (alley) adjoining her property, and upon which it abuts, is as much property as her lot is.   Spencer v. Railroad, 120 Mo. 154; Lackland v. Railroad, 31 Mo. 183; Householder v. Kansas City, 83 Mo. 488; Sheehy v. Railroad, 94 Mo. 574; Chicago v. Taylor, 125 U. S. 165; Tate v. Railroad, 64 Mo. 149; Sherlock v. Railroad, 142 Mo. 172.   (3) A city can not authorize the construction of a railroad track, even though it be laid on the surface of a street or other highway at the established grade, if in so doing such construction would amount to a monopoly or practical appropriation of the street to the railroad company, and to the practical exclusion therefrom of the public generally, and the abutting property owner, even though such railroad track be for public use.

Lockwood v. Railroad, 122 Mo. 86; Knapp, Stout & Co. v. Railroad, 126 Mo. 29; Schulenberg v. Railroad, 129 Mo. 455; Sherlock v. Railroad, 142 Mo. 172. (4) Equitable jurisdiction may be invoked in a case like this. When the injury is destructive, or of a continuous character, or irreparable in its nature, under such a state of facts as is disclosed in this case, the individual specially injured may properly invoke the power of a court of equity to grant relief by way of injunction. Osborne v. Railroad, 147 U. S. 253; Baltimore v. Baptist Church, 108 U. S. 317; Schopp v. St. Louis, 117 Mo. 131; Glassner v. Brewing Assn., 100 Mo. 508; Knapp, Stout & Co. v. Railroad, 126 Mo. 26; Schulenberg v. Railroad, 129 Mo. 455; Osborn v. Railroad, 37 Fed. 830; Sherlock v. Railroad, 142 Mo. 172. (5) Under section five of the ordinance, set up by defendant in its answer, as a justification for its preparation to construct the sidetrack, the defendant would have the right to keep a car or cars standing in the alley adjoining plaintiff's property for twelve hours, for the accommodation of the lot owner across the alley, and might repeat the exercise of that right from day to day for an indefinite time. An ordinance authorizing the standing of coaches or cars in a street is violative of the legal rights of the abutting lot owner. The public thoroughfare can not be devoted to any such use. Bronahan v. Hotel Co., 39 Oh. St. 333; McCaffrey v. Smith, 41 Hun. 117; Colun v. Mayor, 113 N. Y. 532; Lackland v. Railroad, 31 Mo. 180; Turner v. Holtzman, 54 Md. 148; Lippincott v. Lasher, 44 N. J. Eq. 120.

MARSHALL, J.—This is a suit to enjoin the defendant from building and operating a sidetrack of its railroad up, a twenty-foot alley, through a certain block of ground in the city of St. Joseph, and abutting 160 feet on which plaintiff owns four lots described as lots 7, 8, 9 and 10 in block 52 of the original town of St. Joseph, under authority of ordinance No. 1490 of said city.

Plaintiff's amended petition is substantially as follows:

"That defendant, pursuant, to the provisions of said last mentioned ordinance, and without compensation or any offer of compensation to plaintiff, threatens, and has agreed with said firms in block fifty-two, to lay its track up the center of said alley from its present terminus at the south line of Sylvanie street to the south line of Edmond street, and as a continuation of the track laid under the ordinance first above mentioned.

"That by constructing said track and running its engines and cars thereon plaintiff's property aforesaid will be greatly injured, and by reason of the diverting of travel, the closing of access to plaintiff's lots in the rear, the noise, smoke, heat, and dangerous proximity of said tracks, engines and cars, plaintiff's said property will be irreparably damaged and practically destroyed in its present use and for all purposes intended.

"That all of said tracks, laid and to be laid, are and will be for the convenience and private use of said firms alone and to provide for and afford to said firms private and special shipping facilities not accorded to the general public or to other localities within said city limits.

"That defendant, for the purpose of its freight business and traffic, owns and maintains on the south side of Messanie street and opposite the termination of said alley, a large and commodious freight depot, with offices, a switch yard, tracks, and appurtenances, all ample and sufficient to accommodate the public generally and its entire freight business within the limits of said city; that said depot and yards are accessible over paved streets in all directions, and within twelve hundred feet of the buildings and places of business heretofore named in said block fifty-two.

"That defendant is about to and threatens immediately to so appropriate this plaintiff's property and the whole of said alley between Edmond and Charles streets, and by running its engines and cars into and upon the same to deprive plaintiff

wholly of the use of the same and to totally destroy said alley for the purpose for which it was dedicated.

"Wherefore plaintiff prays that the defendant, its agents and servants may be restrained and perpetually enjoined from laying its track as aforesaid, or running its engines and cars into or upon any part of said Charles street or the alley between Edmond and Charles street as aforesaid, and for all other and proper relief."

The defendant answered admitting that it was a railroad corporation as charged and that for the purpose of increasing and improving its railroad facilities for the benefit and use of the public it procured from the common council of the city the right to construct and maintain a switch or sidetrack along and in the alley described from the south line of Sylvanie street to the south line of Edmond street, said right being embodied in the ordinance No. 1490, which is as follows:

"Section 1.   That the right of way be and is hereby granted to the Chicago, Rock Island and Pacific Railroad Company to lay a sidetrack in the alley between Fourth street and Fifth street from the south line of Sylvanie street to the south line of Edmond street, and across Sylvanie and Charles streets, upon the following conditions:

"Section 2.   Said track shall be laid and maintained upon the established grade of said streets and alleys, and shall be laid and maintained so as to leave free and unobstructed all water-ways, sewers or appurtenances which are or may be hereafter constructed or laid in said streets and alleys, and in the event of any sewer-pipe or main being laid by the city in said streets and alleys said railroad company shall care for and maintain, remove and re-lay its track or appurtenances at its own expense, and shall place them in condition to render it safe and practicable to lay, construct or repair said sewers, mains or pipes within five days from the written notice from the city engineer so to do, and said company shall construct or re-construct any inlet, catch-basin or other appurtenance

to any sewer, pipe or main belonging to the city which may be rendered necessary in the judgment of the city engineer by the construction and maintenance of the track permitted to be laid hereunder; and the owners or occupants of the abutting property shall have the right at all times to connect with any sewer, pipe or main in said streets or alleys, under a permit from the city engineer.

"Section 3. In consideration of the privilege herein granted said railroad company shall pave said alleys and the alleyways of each intersecting street with vitrified brick, excepting the space between the rails and two feet outside thereof, which excepted space for the whole length of said track shall be covered with four-inch white or burr oak plank after the track has been thoroughly ballasted with broken stone; the laying of said track together with the paving, ballasting and planking shall be done and completed within six months from the approval of this ordinance by the mayor, and said track, paving and planking shall be kept in good repair by said company. In further consideration of this grant, said railroad company shall hold the city of St. Joseph harmless from all costs and damages whatever, together with all expenses of litigation, including witness and lawyers' fees, arising from any cause of action which may accrue by reason of the laying, maintenance or operation of the tracks or appurtenances permitted to be laid under this ordinance.

"Section 4. The work of constructing, laying, relaying and repairing the track permitted to be laid hereunder, and of the paving and planking hereinbefore described, shall be done under the direction and agreeable to the instructions of the city engineer, and said company shall make and perform any repairs which may become necessary to said track, paving or planking in the judgment of said engineer, within five days after written notice by him so to do, which notice shall be deemed as served when left at the office of any officer or agent of said railroad company.

"Section 5.    Said track shall be used only for the loading and unloading by the abutting property, and cars shall not stand thereon more than twelve hours.

"Section 6.    The laying of the track above referred to or its operation or use by said railroad company shall constitute an acceptance on the part of said railroad company of the provisions of this ordinance, and the right to construct said track shall commence on the passage and approval of this ordinance, but the neglect, refusal or failure of said railroad company to comply with any provision of this ordinance shall of itself work a forfeiture of any right herein granted."

The answer further alleged that it was about to build said sidetrack or switch when restrained by order of the court, and that the said sidetrack or switch was a continuation and part of the defendant's railroad for the use and convenience of the defendant and all those who might have dealings with it and use its said railroad, and denied each and every allegation of the petition not so specifically admitted.

The plaintiff demurred to the answer on the ground that it "does not state facts sufficient to constitute a defense."

This demurrer was sustained, and the defendant declining to plead further, final judgment was entered enjoining defendant "from laying its track or running its engines and cars into or upon any part of the alley between Fourth and Fifth streets from the south line of Edmond street to Charles street, and running through block fifty-two of the original town, now city, of St. Joseph, Buchanan county, Missouri."

Defendant then brought the case to this court by a writ of error.

I.

The defendant contends that: "The answer states a good defense. *Prima facie* the proposed construction, maintenance and operation of the track, under the city ordinance, was lawful, for a public use, and not a nuisance; and the

burden rested upon the plaintiff to prove that the power exercised by the city was improperly exercised in this particular case," and it cites in support of this proposition Brown v. Railroad, 137 Mo. 529; Railroad v. Railroad, 97 Mo. 547; Gaus Mfg. Co. v. Railroad, 113 Mo. 308, and Cross v. Railroad, 77 Mo. 1. c. 321. Defendant further contends that: "The presumption is, that the action of the council was right and proper, and that, in granting the license, due regard was had to the rights of the public and of the owners of property abutting upon the alley," and cites in support of this, Brown v. Railroad, 137 Mo. 529.

These propositions may be fully conceded and yet they will not work a reversal of the judgment below.

The condition here presented is that the plaintiff owns nearly all the property abutting on the east side of an alley twenty feet wide, which runs north and south through block fifty-two of the city of St. Joseph, extending from Charles street to Edmond street, and that the defendant is about to construct, maintain and operate a steam railway switch or side-track along and upon the said alley, under a power granted to it by an ordinance of said city, which by section 5, provides, "Said track shall be used only for the loading and unloading by the abutting property, and the cars shall not stand thereon more than twelve hours." (It is not stated whether this is consecutively or cumulatively.)

This fairly raises the whole question of the rights of the abutting property owner and of the power of the city with respect to putting a steam railroad track and operating the same in the alley, and all *prima facie* presumptions are merged in the complete case here presented.

The propositions of law pertinent to this case have so thoroughly and recently undergone adjudication by this court, that little more need be said than to refer to the decided cases, and to apply the principles they establish to the case at bar.

In Tate v. Railroad, 64 Mo. l. c. 158, it was said by NAPTON, J., that the right of way may be given to construct railroads on streets "where the only obstruction is the passage of trains, and not where embankments have been made above the grade, or where the street is used for sidetracks or other structures for the convenience of the road. For these purposes the railroad company must procure sufficient ground, not altogether dedicated to uses entirely inconsistent with the purposes they propose to apply it."

In Dubach v. Railroad, 89 Mo. l. c. 488, HENRY, C. J., said: "If the character of a street should be such that defendant's track could not be laid upon the street without hindering the public from using it, then no matter how important to the company that its track should be laid in that street, it could not be done, nor is it competent for a city to authorize such use of a street dedicated as a street, as will destroy it as a thoroughfare for public use."

In Lockwood v. Railroad, 122 Mo. 86, after discussing the general rights of the abutting owner and of the city, GANTT, P. J., said, l. c. 99: "In many cases it has been said that the railroad company occupied the street along with the public, but it is perfectly plain that in this case, no wagon of ordinary width can pass on this street with safety when the trains of defendant are on it, even where it had only a single track. . . . Now, while it is true that the public must submit to all reasonable inconveniences in the highways, yet the highways are created for the public and abutting owners, and they have an unquestionable right to require a reasonable use by all who are entitled to use them. As was said by this court in Schopp v. St. Louis, 117 Mo. 131, 'the public highways belong, from side to side and from end to end, to the public' and 'the public are entitled, not only to a free passage along the highway, but to a free passage along any portion of it not in the actual use of some other traveler' and the abutting property owner has the right to the free and unobstructed

passage to and from his property. Said Lord ELLENBOROUGH in Rex v. Cross, 3 Camp 224: 'And is there any doubt that if coaches on the occasion of a rout, wait an unreasonable length of time in a public street, and obstruct the transit of his majesty's subjects who wish to pass through it in carriages or on foot, the persons who cause and permit such coaches to so wait are guilty of a nuisance?'   .   .   .   But we are satisfied that the maintenance of this steam railroad, in this narrow highway, devoted as it has been to wholesale business requiring heavy broad trucks and wagons, must necessarily result in denying the public and the abutting owners the right to use this street as they are entitled to under the laws of this State, and that the ordinance virtually destroys it for street purposes, and therefore the assembly had no power to enact it.   It was an attempt to convert it to a use different from that for which the city acquired it, and is in contravention of its charter, which declares that 'no railroad shall be so constructed as to prevent the public from using any road, street or highway along or across which it may pass,' and the general law of the State that prohibits a railroad from impairing the usefulness of any street."

In Knapp, Stout & Co. v. Railroad, 126 Mo. 26, BLACK, C. J., reviewed the cases decided prior to that time (1894) and said: "Taking these cases all in all, it is very clear a munic-. ipal corporation has no power to grant to a railroad company such use of a street as will destroy its usefulness as a public thoroughfare, or destroy or unreasonably interfere with the right of an abutting property holder  to access to and from his property.   Though the city gave its assent to the construction of this railroad track, still the defendant was bound to construct and use the track with due regard to the rights of the public and adjacent property owners.   The defendant has no greater rights than others, for in the use of the street it is but one of the public, and must conduct and operate its track accordingly.   As said in Railroad v. Twine, 23 Kansas 585,

'A railroad company has no higher rights in a highway than an individual—it may share its use, but can not monopolize it; and the owner of a lot abutting on the highway, and who has special need thereof for ingress and egress from his lot, is especially damaged by any monopoly of the use of the highway by a railroad company.' Guided by these principles, it is plain this switch track is an illegal structure, for it in effect deprives the plaintiff of any use of its Hall street front. We have here a virtual attempt to confiscate plaintiff's right of access, which right we have seen is private property. The structure is a public nuisance, and as to the plaintiff it is also a private nuisance, and ought to be removed with all due speed."

In Schulenburg & Boeckeler Lumber Co. v. Railroad, 129 Mo. 455. MACFARLANE, J., followed approvingly Lockwood v. Railroad, 122 Mo. 86, and held that "a city can not confer authority to construct a steam railroad on a sidewalk and adjacent part of the street where the abutting property owner's use of the same will be permanently hindered and the street rendered useless as a thoroughfare for travel."

In Sherlock v. Railroad, 142 Mo. 172, GANTT, P. J., again reviewed the cases in our State on this question, and said: "More than this, the city has no power to grant the use of this alley to a railroad company to lay its tracks therein and operate its engines and cars thereon, if the ordinary and reasonable effect of such grant will be to prevent or unreasonably impede and obstruct the passage of vehicles belonging to the abutting owners or other members of the public desiring to use such alley. Now the facts of this case are so obvious that their bare statement demonstrates that the ordinance permitting the laying of this track with the unlimited right to run steam engines and cars thereon at all times of day or night practically gives the defendant the monopoly of that alley, the very nature of its use by the defendant each time totally obstructing it and excluding all others thereform. Such a use is not

'to be compared to that ordinary inconvenience or delay which an ordinary wagon or vehicle may cause to another of like kind."

The reason underlying all these cases is that roads, high-ways and streets, whether dedicated or condemned, are held by the public authorities in public trust, primarily for the free and common use of the whole traveling public, with special privileges to none, and, secondarily, for the benefit of the owners of abutting property to afford access to their property; while the alleys are held in trust for the special and particular benefit of the property in the block which abuts the alley, and are intended to afford rear access to such property. The whole public is interested in the roads, highways, and streets, because they subserve a general public use, and therefore property not directly abutting them may be charged for their establishment, because being continuous and extending between far distant termini they are essential and useful to all persons owning property fronting on any part thereof, but the alley in each block is a complete entity unto itself, and it is immaterial to the owners of property in one block, whether there is an alley in the next or any other block or not, and likewise immaterial to the general traveling public whether there are any alleys or not, and hence the cost of establishing an alley is naturally and logically confined to the property in the particular block through which they are opened and upon which the property abuts. [St. Louis v. Juppier, 16 Mo. App. 557.]

Included in the right of access, is the right of the abutting owner to temporarily obstruct the free and open passage way over a portion of the street for the purpose of loading and unloading goods to and from his premises. This principle is recognized in Gerdes v. Iron & Foundry Co., 124 Mo. l. c. 354, where MACFARLANE, J., speaking of the obligation on the public authorities to keep a street free from obstruction and fully open for public use, said: "There is a well recognized

qualification to this strict rule, which is declared by Judge DILLON in this language : 'But it is not every obstruction, irrespective of its character or purposes, that is illegal, even though not sanctioned by any express legislative or municipal authority. On the contrary, the right of the public to the free and unobstructed use of a street or way is subject to reasonable and necessary limitations and restrictions. The carriage and delivery of fuel, grain, goods, etc., are legitimate uses of a street, and may result in a temporary obstruction to the right of public transit. Temporary obstructions of this kind are not invasions of the public easement, but simply incidents to or limitations of it. They can be justified when, and only so long as they are reasonably necessary. There need be no absolute necessity, it suffices that the necessity is a reasonable one. [2 Dillon on Munic. Corp. (4 Ed.), sec. 730 and cases cited; Stephens v. Macon, 83 Mo. 346; Welsh v. Wilson, 101 N. Y. 256.]" Accordingly it was held in that case that a manufacturing company "had no right to make a permanent use of the streets for storing its property, or to make such temporary use as would unreasonably interfere with travel. The unreasonableness of the use should be measured by the character of the articles to be handled."

The sum of it all is that the public can not grant to any one exclusive rights in a public highway nor can it authorize any one to use the whole or any part thereof in such a manner as to unreasonably interfere with its use by the other members of the public or with the right of access of the abutting owners to their property. Neither can any abutting owner use any part of the highway in such a manner as to permanently or for an unreasonable length of time obstruct or impede the use of the highway by the public. Storing merchandise on a sidewalk or placing them there for any length of time for advertising purposes; placing finished products of a factory on the highway and leaving them there for an unreasonable or unnecessary length of time, awaiting shipment or for any

other purpose; erecting permanent advertising signs on or over any part of the highway; standing hauling or delivery wagons on the highway in front of a place of business for a longer time than is reasonably necessary to load and unload them, these and many other acts that might be mentioned are unlawful and constitute nuisances whether authorized by the public authorities or not.

In the case at bar it is plain that while a train of cars was moving along. or standing upon this twenty-foot alley, no vehicle could use it, and the ordinance puts no limitation upon the continual and continuous use of the alley, by day and by night, by the railroad company, and therefore the case falls within the prohibitions established by the cases cited, and the ordinance is void. But this ordinance is worse than any that has ever before been construed by this court, for it authorizes the cars to stand on the switch track in this alley for twelve hours. True the ordinance is vague in not specifying whether the twelve hours must be consecutive or cumulative, but the reasonable interpretation is that the track must not be used for loading and unloading cars more than twelve hours consecutively. This in itself makes an unreasonable use of the alley, but there is nothing in the ordinance to prevent the railroad company from standing one train of cars in the alley for twelve hours, removing them and after an interval of an hour or two standing another train of cars there for twelve hours, and thus make the use of the alley practically permanent and continuous to the exclusion of the peculiar rights of the owners of the abutting property in the block. This feature is patent on the face of the pleadings. It is a fact admitted in the case. No testimony is necessary to satisfy the court that all *prima facie* presumptions in favor of the proper exercise of power by the city or of the lawfulness of the use by the railroad company, have been overthrown by this pertinent and controlling fact. Testimony in such a case is wholly unnecessary for it could throw no light upon what

common sense and the experiences of mankind, of which the court takes judicial notice, already makes plain by the simple reading of the ordinance.

The judgment of the circuit court, permanently enjoining the construction, maintenance or operation of the railroad switch track, was proper and is affirmed. All concur.